So I understand that Mr. Hogan and Mr. Fox are going to split time from appellant's time, so I'll leave it to you to decide when to do the switch. Your Honor, what I would like to do is, may it please the Court, I'm Stephen Hogan, I represent Avi and William Bortz. I would like to reserve two minutes for rebuttal, and I would give Mr. Fox about eight minutes. So I'll keep an eye on the clock and try to hold mine to ten minutes. And I would encourage the Court to ask any questions or direct me if there's certain issues they want to cover. We covered a lot in the briefs, but at its core, this appeal presents a remedial statute that was created to protect elders like Avi and William. And it involves two simple errors by the district court where it did exactly the opposite. It protected the bank instead of these elders. And the question really is whether the California Supreme Court would reject the district court's reasoning, and especially its reliance on the Doss case, which relied on Casey. First, William and Avi have alleged facts showing a taker claim under subdivision A1 of 15610.30. Counsel, I want to stop you here for a second because I thought that the California Supreme Court already didn't give an indication that it was not going to revisit the Doss decision last year when it refused to consider the decision in the, I believe it was the Huron's U.S. Bank case? It's accurate that the California Supreme Court declined review in that case. But the California Supreme Court declines review in almost every case that comes before it. Well, citing Haas, though. Pardon me? Citing Doss, though. Well, correct? Right, but the California Supreme Court did not, they just rejected review. They did not say that we approve of or disapprove of Doss. There's a thousand other reasons that have nothing to do with their reliance on Doss. So the difficulty I have, Mr. Hogan, with this is that it seems, from my count, Doss has been followed by four or five unpublished intermediate appellate court decisions. And I'm not aware of any that has gone in a different direction of its interpretation of the statute than Doss. And so you're asking us to predict what the Supreme Court might do when several of our colleagues on the state appellate bench have relied on Doss in these cases. Should we not take that as an indication that Doss is still good law and the correct interpretation of at least the A2 claim of assisting and taking? Because I understand the direct taking has been changed with some statutory language. That's right. And the reason is that the other unpublished decisions, which in most cases, they're not considered controlling law or even persuasive. And so this court should keep that in mind when it looks at those. The other part is that those cases each kind of accepted whatever the Doss, however Doss intersected with their case. And then they went on and just decided other issues. So it's very important that no California intermediate court has examined or the Supreme Court has examined the logic of Doss. And what Doss did is it reached down to Casey, which was not an elder abuse case. It was simply a common law claim by a non-customer against a bank. And in that situation, public policy is all in favor of protecting the banks from being sued by third parties. But I guess, so let's get into that for a second. And I know you were going to start with direct, but let's stick with the indirect claim. Doss, and relying on Casey, is speaking about assisting in another's intentional commission of a tort. And importing the actual knowledge requirement to that. And here you have language that's assisting in either a wrongful taking or intentional fraud or both. So why was it improper for Doss to map on to our common understanding of aiding and abetting a tort with the assisting language here? Well, we start with the fact that this is a remedial statute that was designed to protect William and Ave. And so it must be construed in a fashion that will be most protective of William and Ave, not protective of the banks. And in that context, reaching out to equate assist with a much different concept of aiding and abetting, which does require guilty knowledge, is far beyond what the statute requires and far beyond what the legislature had in mind. The legislature wants this statute, A-2, to protect people like William and Ave whenever somebody like chasing its bankers assists in a scam. So does your view of assist mean, do you believe that it's a strict liability statute? So long as someone else has scammed an elder person, if the bank or someone facilitates that with no knowledge element, that's sufficient to impose liability on that person who's assisting? That's the way I read the statute, Your Honor, and it makes sense because... But what do we do with the language with intent to defraud? Is that, that would be on the third party's intent? How are you reading that? I read that as the word or comes in front of that. And so, and I hadn't focused on, because we weren't arguing there was an intent to defraud. I hadn't focused on that, but if there is... But can I, it's a strange reading, I have to say, because if the direct taker, let's just start with intent to fraud. If the direct taker has to be proven to have had a specific intent to defraud another person, so some sort of heightened mens rea, but liability on the assister is lower, isn't that a strange thing that you can reach the assister far more easily than the actual person who's doing the intentional tort? Two points on that. One is in product liability cases, I buy a bunch of bicycles from a manufacturer in China who knowingly makes defective bikes, and I sell them at a loss to people in the United States, and they get injured, they prove the defect, they sue me. The law makes the, places the risk of me getting the money back from China on me, not on the innocent consumer. Sure, but the California legislature has very specific reasons for creating strict liability in the product's liability context. How does that, how is that relevant here? I would argue it's exactly parallel here, because they have very specific reasons to protect people like William Nave. And so in a situation like we have... But wouldn't they have explicitly said that, established some strict liability language here? And they didn't do that, did they? They did not say strict liability. But the other point is... Well, let me ask you, are you aware of any instances, any cases, any statutes that impose strict liability in the commercial context? None come to mind, Your Honor. This is a rather unique circumstance, because it's a unique statutory scheme. And I don't have another example for you. But one thing I will say is, the one thing that this statute does not impose on an assister is an actual knowledge of the underlying fraud. The most that would be required, if you construe this statute as being, as not being requiring strict liability, would be the same standard, new or should have known, that is applied to the scammers. And so either way, strict liability or a new or should have known standard... But we'd have to write in, we would have to... We, the judges, would have to write in that into the statute, or an understanding of that into the statute. Either that or read the statute exactly as written. And the statute exactly as written says, if I assist somebody who knew or should have known they were likely to harm these elders, then the risk falls on me of recovering from those people, and not on the elders. Either way, I'm happy with the result. When I did the plain language analysis, I fully expected to come to the conclusion that it didn't say strict liability, and that it did say the same standard for both. That's not the way it came out, and I have to be honest with the court. So that's the way I read it. Others read it differently, but the only court that's ever read it as importing and aiding and abetting actual knowledge standard is DAS. And that protects the banks at the expense of William and Abhi. And I see that I've gone over my time. Other questions, I'm happy to answer. We may get that on the reply. Great. Thank you, your honors. Good morning, your honors. May it please the court. I'm Frank Fox for the Institute on Aging, and let me begin with the question that was raised about whether or not it's a strict liability standard under the word assist as written. I think the canons of construction that require a court construing the statute to harmonize its provisions would preclude the imposition of a strict liability standard because it would be anomalous to have a direct taker liability for obtaining property when they should have known it was harmful, but to hold the assister of that strictly liable without regard to the level of knowledge. Far more appropriate, I would submit, is what the California trial courts have done on at least three, and I understand from an email I got last night, now four occasions, in overruling demurs based on the actual knowledge standard. And what the first case I handled, it's part of the record, Smith v. Bank of America. Bank of America demurred, argued actual knowledge standard. This is after the 2008 amendments, of course, and the San Francisco trial court said, while the statute's unclear, the more protective reading is to hold an assister liable if they should have known they were assisting financial abuse. So, Mr. Fox, let me follow up with that because the source of your argument, I believe, is from the subdivision B, and that has a language of known or should have known. But that paragraph speaks to a person or entity shall be deemed to have taken and doesn't include the words or assisted in taking. Right. I agree, Your Honor. So that's the difficulty with your argument is there's a direct relationship with the taker and having that known or should have known requirement, but it's not there for assisting in taking. So wouldn't we, to Judge Mendoza's point, have to read into A2 that same negligence standard to use a shorthand that is not there on the plain face of the statute? I agree with that point to an extent, Your Honor, that the word assist is not ambiguous. People D. Rodriguez cited in an appellate brief says assist means the ordinary meaning is, you know, to help or support, and then I looked at the dictionaries and there's a remarkable consistency to aid, help, or support. Arguably, assist is synonymous with aid, but the California Supreme Court has said the plain language of assist is to help or support. So the word assist is not ambiguous, right? But the statute as currently written and as applied by the district court is. And this is the problem with DAS, and if I can step back, I think. Well, just one second. Sure.  If you're saying that the problem is the statute, right, the way it's written, it's my understanding that it's being amended, correct? Well, that's not at all clear, Your Honor. There have been proposed amendments. Nothing happened this year. Whether anything happens next year is anybody's guess. But given the fact that they're trying to amend it to fix this problem that you've identified that you think is important, shouldn't that also give us pause that we need to read it as it is now, not as we want it to be read? I agree, but isn't the central question whether DAS got it right? And if we could step back and look at the path. Why should we determine if the California Supreme Court itself has declined to examine the issue, why should this court assert its judgment for that of the California Supreme Court? I would argue that this court is now in a unique position because of the record before it and because the specific arguments have been made. You know, I have read the briefs in DAS, and they're cited in our amicus brief. And if you go to look at those briefs, what you have, I would argue that DAS is the product of a process that is challenged when you have a self-represented appellant, right? So if I can I, I'm not that persuaded by that argument because there have been two unpublished California state appellate decisions since DAS that specifically apply to banks, you know, Tedesco and Hurons. As my colleagues have pointed out, neither of which, you know, the Supreme Court hasn't taken up review on those cases. So how are we, aren't we required to look at, in order to try to predict what the Supreme Court might do, to look at the only published authority that is in existence to this point, rather than trial court decisions? I think you need to look at it, but I think you need to look at the canons of statutory construction and the other decisions. Three different California appellate courts have emphasized that the Elder Abuse Act is remedial. And the legislature has made financial abuse the most serious form of abuse. If you compare the remedies section in Welfare Institution Code 15657, which is the remedies for neglect and abuse, with the remedies available under 15657.5, the remedies for financial abuse, to recover, for an elder to recover for neglect or abuse, they have to prove it occurred by clear and convincing evidence. Mr. Fox, you won't have no argument, I am sympathetic to the policy reasons why someone might want to change the statute. And the vulnerability, the vulnerable population, that's at issue here. I, you have no disagreement with me about that. But it seems as if you're asking us to read into something that is not either in the plain face of the text of the statute, or some sort of other clear indication that DOS was incorrectly decided. I think what I'm asking you to do, the panel to do, Your Honor, is to look first at the remedial policy, which three different courts have said must be liberally construed. And then in our footnote five and six in our amicus brief, we cited a dozen provisions where the legislature used the terms aiding and abetting, and a dozen provisions where they used the word assisting. Now, in that footnote six in the DOS respondent's brief, they say assist is not defined. None of the 12 other code provisions where the legislature uses the word assist to create a standard of conduct defines the word assist. And as the Supreme Court told us in Rodriguez, the plain language is established, it doesn't need to be defined. Is assist, I wonder, is assist the right word to focus on alone? It is. Or, sorry, go ahead. I'm sorry. I was just going to say, because it's assisting in a wrongful taking or intent to defraud. It's in that context that we have to consider what assist means, don't we? Well, if I can just circle back to what DOS. Or counsel, or the word for, for wrongful use, for. Doesn't for sort of imply that there's a purposeful? Yeah, but if you, you have to start at the beginning of that provision, and it says a person or entity shall be deemed to have obtained property, taken or appropriated property for wrongful use if they knew or should have known their conduct was likely to be harmful. And, and, and what, you know, it's important to recognize that what DOS did is it ignored assist, which does not involve a guilty mindset, and it inserted aiding and abetting, even though we've got dozens of statutes that show the legislature knows how to use aiding and abetting when it wants to, and it didn't here. And you couple that with the remedial policy that requires liberal construction, and DOS, DOS imported, inserted into the definition, an actual knowledge standard, which is the least protective, the least protective possible standard. I'm way over my time, and I, I need to save time for, I'm happy to answer any questions, but. No, we have no other questions at the moment. Thank you. Good morning, Your Honor. It's Julia Strickland on behalf of Chase and the individual defendants. May it please the court. Very simply put, the argument of appellants and Amici is not actually about what the law is, but rather what they would like it to be. And I think the questioning from the court underscores that point. So, appellants and the Amici ask that this court essentially rewrite the statute and ignore the significant authority, both from the courts of appeal in California, on six different occasions, as well as multiple federal district courts also who have relied upon DOS, including in cases involving banks. And they're asking that the court rewrite the statute to align with their view as to what public policy is. And part of their argument is that it's a remedial statute, and in fact, the statute should be construed in a way that favors those who are supposed to be protected. Having said that, when the statute is clear on its face, as multiple courts have already concluded, there is no reason to invoke that case law that says you look at the purpose of the statute. Well, counsel, it's not the model of clarity, assist in taking. I could see counsel's argument as to why they want us to construe it in the way that they want us. I think your point is well taken about wanting to rewrite the statute, but clarity could be better here. Your Honor, I don't actually agree with you that it could be clear, and multiple courts have agreed with me, including, Your Honor, in an unpublished Ninth Circuit decision from 2021, which is cited by the trial court, which is the Piscinta Band of Indians, which cites DOS for the proposition that assist requires an element of knowledge. And so this court came to that exact same conclusion. This is a remedial statute, and part of what's contemplated in the act are other things that are not contained within common law, such as a reporting requirement. And so to use our counsel's point, maybe the legislature did intend for assist to mean something different than the common law understanding of aiding and abetting. Why is that incorrect? Well, there's literally zero support for that proposition in the published legislative history, which we have in California. And the case law subsequent to that statute's enactment also provides zero support to that proposition, except for three, and I understand maybe four, as of yesterday, trial court decisions, three of which are all from the same court in San Francisco, and that are totally contrary to the DOS decision, which notably, DOS itself, the California Supreme Court, had the opportunity to review and declined. There was a petition for review in that case, and the California Supreme Court declined to take it. And so... So let me ask you this. You have the 2008 amendments allowed for a wrongful taking by the taker in which someone either knows or should have known that it's likely to cause injury to the elder victim or adult dependent. How should we then construe someone who assists that third party who, let's just say, should have known? It's a little bit weird to, at least for me, to conceive of having actual knowledge of someone else who should have known that it was likely to cause harm. Is that... Given that there's a negligence standard, in essence, for the taker, isn't that a strange construction in your mind? I'm not exactly sure as to what construction Your Honor is thinking about, but it is our position that the statute is actually quite clear on its face. There is a lesser standard for the taker because the taker is actually the active participant in the alleged wrongdoing than there is for the assister who is secondary, a joint tort-freezer type standard, but secondary to the actual wrong that's being committed. And for that reason, the assister would need to have some heightened level of knowledge. And what would that heightened level of knowledge actually be? Actual knowledge. And this case is a perfect example of this situation. So what's the court to make of the should have known language? The should have known language clearly only applies to the taker. And that's very clear from the face of the statute. The taking is provided for in A1 and B, which is what provides the should have known language. When you read it, the prefatory language in that statute is very specific to a taking and then goes on to say if the taking, the standard is the should have known. Are you suggesting that there are no circumstances under which the bank should not ignore what might very well be apparent red flags? Well, I think there is a double negative in that question. And there are many, many, many public policy reasons why banks are not held liable in situations. In other words, if there are obvious indications in transactional activity, you're arguing that the bank has no obligation to at least investigate this matter or follow up with it? Under the law, there is no such rule. And there are myriad public policy reasons for that, which are laid out in detail in our briefs, as well as in the brief filed by the California. California legislature has been pretty clear about what it desires with respect to public policy and protections for the elderly, right? There's no question. But the notion of generalized protection for the elderly, of which I might add, I'm covered by the statute. We all hope to be someday. Well, I think I am too, by the way. But in any event, and by the way, I also don't want to be going to the bank and told that I can't access my money because I'm over 65 years old. And I think I'm perfectly competent. But maybe the panel will disagree with me at some point during the argument. But in any event, the notion of a generalized protection for a group that one wishes to protect, people that are vulnerable or elderly or what have you, is very different than the implementation of that kind of a public policy in real life in the specific instance. And what appellants and Amici would ask the court to do by imposing either a strict liability standard or Amici actually disavowed that that's the standard. So there's not even our agreement on that side of the courtroom as to what the standard is. But the implementation of a standard like that requires banks. And frankly, the statute doesn't only apply to banks. It applies to retailers. I mean, you go to the store and you say, hey, I want to buy a bottle of Johnny Walker Black. Pick something. Well, we think you're a little too old, you shouldn't be drinking, do you really need this? This statute in implementation in real life is just not realistic to construe the statute in the way that they would like the court to construe it. It would turn banks and retailers and any number of other people, including caretakers and the like, into private investigators or public investigators. And that may be. But if the legislature does it, then your clients will have to figure out a way to deal with constructive knowledge as a standard at that point. But help me puzzle out the question I had earlier. If a taker can be found liable just for should have known, for the person who's assisting, what is the actual knowledge in that circumstance? For example, if the taker disclosed in some form or fashion that they were doing this particular thing, I mean, that would be actual knowledge. It still has to be the DOS actual knowledge of some sort of fraudulent scheme or some sort of wrongful act. Absolutely, Your Honor. And let me comment about the legislation. There have been multiple drafts of the proposed legislation. And the fact that there's proposed legislation to address this and potentially change the statute, I think speaks for itself as to what the statute is now. Well, I don't think we can draw any sort of. I think California law is clear that we can't draw any sort of inferences from, you know, incomplete bills that haven't been passed one way or the other, can we? Well, we would agree on that. But the fact that there is even this exercise happening certainly suggests that the legislature doesn't think the statute is clear at the moment. And so I don't know that you can draw a dispositive inference. But I think one can reasonably conclude that the statute itself is clear. It's quite clear on its face. And there's. Let me ask you about the direct taking claim. And we'll follow up with some questions for opposing counsel about that. I think the briefing from Appellant on direct taking is that is reliance on this subdivision C. We're taking. Well, I don't know. Let me ask you, what do you make of that argument? How would you respond? Well, the subdivision C being the undue influence argument. No, no, that was. Which are you thinking of? The as I understand the direct taking argument, it's that Mr. Bortz's funds were taking taken in the process of having the wire transfers completed by the bank. Well, it's just completely incorrect, factually, as the trial court concluded. I mean, the money was taken by the scammers. The money was never taken by the bank. The money was deposited into the bank. And then the Bortz's directed. Remember, these are authorized transactions. The Bortz's directed that this money be transferred. At the Bortz's direction, as the bank was required to do, the bank transferred the funds. It didn't take the funds. If anything, it said, you know, sent the funds out at the direction of the at the direction of the Bortz. But I think Mr. Bortz is arguing that itself constitutes a taking. I understand that Mr. Bortz is trying to argue that. But on the other hand, it's completely contrary to the plain language of the statute and the law and the facts. And the trial court concluded that the taking here was by the scammers. And we all can agree that these are unfortunate situations. And they're not unfortunate or catastrophic for these people who are just completely out of probably their life savings. I mean, it's that that's catastrophic. It's not unfortunate. There's your honor. There's no question. This is a terrible, terrible situation. We can all agree on that. But the legislature has assigned responsibility for this. And the responsibility in large part rests with the takers and only under extraordinarily limited circumstances with the alleged assisters. And you have to look at this in the context of the laws in California and elsewhere, but certainly in California, as they stand with respect to banks and the boundaries within which banks are responsible. There are myriad cases. They're cited in the briefs. I'm sure the panel is familiar with them from other cases as well that are very clear that banks' responsibility is not boundless. Banks are not fiduciaries for account holders. Banks are not responsible for supervising the account activity of an account holder. And there's good reasons for that. There are good public policy reasons for that as well. Privacy, for example. I mean, if I go to the bank and I say, I want, you know, $50,000 of my money transferred, is it really appropriate for the bank to say, well, where are you sending it? Why do you want to use it? And this comes up all the time. So there are countervailing policy reasons for these boundaries on banks. And there's also statutory support for boundaries on banks. And specifically, the commercial code addresses wire transfers. And says, if a wire transfer is authorized, the bank is not responsible. So yes, these are catastrophic situations. Was that the bank's position with the last wire transfer where there was an attempt to try to stop it and somehow that didn't succeed? Was there ever, I don't know, was there a negligence claim that was ever raised or anything with respect to that last wire transfer? The negligence claim was actually abandoned. There were a number of other theories alleged and ultimately abandoned by the plaintiffs in this case. Okay. Any further questions? I think I'm... We do not have any other questions. Thank you. Thank you very much. We, in closing, would ask that the trial court's decision, which we think is well reasoned, be affirmed. And that the reasoning and holding in DAS and all of the subsequent authorities relying on DAS, including the Heron's case, which review was denied, as well as this court's decision in Piscata Band, as well as the multiple trial court decisions from the federal courts, be upheld. Thank you. Thank you. Thank you, Your Honors. I'll be brief. First, to the question, how does Chase actually know that the scammers should have known that their conduct would likely cause harm to William and Ave? I would answer that the facts showing that we have in this case that Chase should have known that this was a scam would be enough to meet the actual knowledge standard. Chase actually knew the scammers should have known that their conduct was likely to harm William and Ave. That shows just how difficult it is to apply the DAS aiding and abetting standard in the context of this statute. And I would submit that under A2, it is either the strict liability standard that the plain language tells me, or if we have difficulty with that, the remedial nature of the statute requires that we apply the same standard, knew or should have known, to both assisters and takers. On the direct taking, the statute, subdivision C, defines the word take as having deprived any time the elder is deprived of a property right. But does that apply even if someone wanted to do a wire transfer, no untoward motives, and sends it out? Is that person being deprived of a property right? No, because in that circumstance, you just have an ordinary commercial transaction. But in this circumstance, we have somebody who comes in and is being scammed, and somebody else is trying to get their money. But don't the words take, secrete, appropriate, obtain, or retain, don't they all suggest acquiring property for oneself? And I don't understand the bank to have done that. They were just processing a wire transfer request. I would submit that the word appropriate is itself broad enough to include, I don't need to take possession, I take the money, I just need to take control of it and transmit it to a third party. I don't think the statute really, the reason they defined it as any time an elder is deprived of a property right is they wanted this remedial statute to be broadly applied. They wanted to encourage people like us to represent people like William and Abe to bring back and save them from these catastrophic losses. But wouldn't that shift quite substantially the burden of at least conducting some due diligence from the account holder to the bank, such that the account holder could just wear blinders and say, well, I'm just going to go on and wire this money, and if it's improper in some respect, I'll let the bank figure it out. Well, what we have... Isn't that the result of what you're asking the court to find? It isn't, because under A-1, what we need, we need to prove that the bank knew or should have known that their conduct was going to harm these elders. And so that is the safeguard against the difference between just an ordinary commercial transaction and one here where the district court recognized this was a classic case where there were sufficient red flags that chastened its bankers, should have known that this was a scam. And in that circumstance, you have under A-1 a taking because the bank should have known it was a scam, and they took the money and gave it to the scammers. And that's because you believe that they were a more sophisticated party? Well, it comes down to... That factor in at all? Well, it does factor in, but the facts that we've alleged show that the bank should have known that this was a scam. It's a classic scam. The banks are aware that this type of scam is done, 41 years, no wire transfers, suddenly four, three or six figures, one is almost six figures. Those are the classic facts that put the more sophisticated bank on notice that this is likely a scam. And so under A-1, I think we have a taking. And as interesting as assist is under A-2, I don't think we even need to reach that to get a reversal. We believe this court should and can reverse this judgment today. But if this court is at all concerned that the California Supreme Court would not agree with my arguments, then this court should certify the questions that we have submitted to the California Supreme Court. The California Supreme Court can then tell us whether it denied review in the other cases because it was too busy, or whether it wants to review them. And I think that's the only... But as are we. Mr. Hogan, is there anything else before you wrap up? No, I thank you very much for the time. Thank you. And thank you all for your helpful arguments. The matter will stand submitted and court is adjourned. All rise. This court for this session stands adjourned.
judges: SANCHEZ, MENDOZA, Jackson